Elliot Gale (Bar #263326)
egale@gajplaw.com
Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorneys for Plaintiff
Donna Jackson

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

|  |  |
|---|---|
| Donna Jackson<br><br>                    Plaintiff,<br><br>     v.<br><br>First National Bank of Omaha<br><br>                    Defendant. | CASE NO.  2:20-cv-01295-DSF-JC<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES:**<br><br>1. Violation of the Rosenthal Fair Debt Collection Practices Act<br>2. Intrusion Upon Seclusion<br>3. Violation of the Telephone Consumer Protection Act |

COMES NOW Plaintiff Donna Jackson, an individual, based on information and belief, to allege as follows:

### INTRODUCTION

1. Plaintiff brings this action against First National Bank of Omaha in response to receiving approximately two hundred and fifty (250) telephone calls from First National Bank of Omaha over the course of four months.  These calls continued despite First National Bank of Omaha receiving five (5) separate certified notices demanding the calls stop and informing First National Bank of Omaha that Plaintiff was represented by counsel.

2. This is an action for damages brought by an individual consumer for Defendant's violations of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §1788, *et seq.* (hereinafter "Rosenthal Act"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices, intrusion upon seclusion, which California has adopted from §652B of the Restatement (Second) of Torts, and violation of the Telephone Consumer Protection Act 47 U.S.C. §227, *et seq.* (hereinafter "TCPA"), which prohibits the use of automated dialing equipment when making calls to consumers.

3. Plaintiff brings this action against Defendant First National Bank of Omaha (hereinafter "Defendant" or "FNB Omaha") for its abusive and outrageous conduct in connection with debt collection activity.

4. In Calif. Civil Code § 1788.1(a)-(b), the California Legislature made the following findings and purpose in creating the Rosenthal Act:

> (a)(1) The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers.
>
> (2) There is need to ensure that debt collectors and debtors exercise their responsibilities to another with fairness and honesty and due regard or the rights of the other.
>
> (b) It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts of practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts, as specified in this title.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. The TCPA was designed to prevent calls like the ones described herein, and to protect the privacy of citizens like Plaintiff, and by enacting the TCPA, Congress

intended to give consumers a choice as to how corporate entities may contact them and to prevent the nuisance associated with automated or prerecorded calls.

## JURISDICTION & VENUE

7.  This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 47 U.S.C. § 227.

8.  This venue is proper pursuant to 28 U.S.C. §1391(b).

## GENERAL ALLEGATIONS

9.   Plaintiff Donna Jackson (hereinafter "Plaintiff") is an individual residing in the state of California and is a "debtor" as defined by Cal. Civ. Code §1788.2(g).

10.  At all relevant times herein, FNB Omaha was a company engaged, by the use of mail, email, and telephone, in the business of collecting a debt from Plaintiff, and a "consumer debt," as defined by Cal. Civ. Code §1788.2(f).

11. At all relevant times, Defendant acted as a "debt collector" within the meaning of Cal. Civ. Code §1788.2(c)

12.  Plaintiff opened an unsecured credit account with Defendant in early 2017.

13.  The account Plaintiff opened with Defendant was primarily for personal, family or household purposes and is therefore a "debt" as that terms is defined by the Calif. Civil Code § 1788.2(d) of the Rosenthal Act.

14.  Defendant has been attempting to collect on a debt that originated from monetary credit that was extended primarily for personal, family, or household purposes, and was therefore a "consumer credit transaction" within the meaning of Calif. Civil Code § 1788.2(3) of the Rosenthal Act.

15.  Because Plaintiff, a natural person allegedly obligated to pay money to Defendant rising from what Plaintiff is informed and believes was a consumer credit transaction, the money allegedly owed was a "consumer debt" within the meaning of California Civil Code § 1788.2(f) of the Rosenthal Act.

16. Plaintiff is informed and believes that Defendant is one who regularly collects or attempts to collect debts on behalf of themselves, and is therefore a "debt

collector" within the meaning of the Calif. Civil Code § 1788.2(c) of the Rosenthal Act, and thereby engages in "debt collection" within the meaning of the California Civil Code § 1788.2(b) of the Rosenthal Act, and is also therefore a "person" within the meaning of California Civil Code § 1788.2(g) of the Rosenthal Act.

17. Plaintiff's account was an unsecured credit card and Plaintiff began making payments on the account shortly after it was opened.

18. Plaintiff was making payments on the account for several years before she became financially unable to keep up with the monthly payments.

19. Defendant began contacting Plaintiff August of 2019 to inquire about the status of the account and to collect on the payments that were no longer being made.

20. Plaintiff retained counsel to assist in dealing with Defendant's debt and to seek some type of financial relief.

21. Counsel for Plaintiff sent Defendant an initial letter confirming representation of Plaintiff and informing Defendant that it was to no longer contact Plaintiff directly and that all calls/letters/collection efforts were to no longer be directed at Plaintiff.

22. The contents of the letter also informed Defendant that Plaintiff was withdrawing her consent to be contacted on her cellular telephone if any such consent had ever been previously given.

23. Counsel for Plaintiff sent the letter of representation to Defendant through certified mail on or about September 5, 2019. Defendant received the certified letter on September 9, 2019.

24. Plaintiff informed Defendant that she was revoking her consent to be called on her telephone in September of 2019.

25. Defendant continued to contact Plaintiff even after it had received Plaintiff's September 5, 2019 letter.

26. A second notice was sent to Defendant, also through certified mail, on October 17, 2019. The notice reminded FNB Omaha that Plaintiff was represented

by counsel and that she also was revoking her consent to be contacted by an auto dialer.  FNB Omaha received the second notice on October 21, 2019.

27. Despite two notices being received by FNB Omaha the calls continued. Plaintiff grew increasingly frustrated and annoyed at the frequency of the calls.

28. In response to Plaintiff's growing frustration, a third notice was sent to FNB Omaha on October 30, 2019 and received on approximately November 4, 2019.  To avoid any potential misunderstanding, Plaintiff's October 30, 2019 notice contained copies of the prior two notices that were sent.

29. Plaintiff, however, continued to receive calls from FNB Omaha.

30. A fourth notice was sent on November 15, 2019, again through certified mail, and was received by FNB Omaha on November 21, 2019.  The fourth notice, like the third, contained copies of the prior notices that were sent to FNB Omaha.

31. Unfortunately for Plaintiff, the first four notices did absolutely nothing to stop the auto dialed calls from FNB Omaha and a fifth notice was sent, through certified mail, and included copies of all prior notices.  The fifth notice was sent on December 30, 2019 and received in early January of 2020.

32. Undeterred, FNB Omaha continued to call Plaintiff and ignore the certified notices that were provided by Plaintiff and Counsel regarding her representation and revocation of consent to be contacted on her cellular telephone.

33. Instead, FNB Omaha was determined to extract payment from Plaintiff despite having knowledge that Plaintiff was represented by Counsel and had revoked her consent to be contacted on her cellular telephone.

34. Plaintiff and her Counsel continued to provide notice, through certified mailings, to FNB Omaha regarding Plaintiff's representation.

35. Each and every notice was received by FNB Omaha.

36. Between approximately September 13, 2019 – present FNB Omaha contacted Plaintiff on at least 250 (two hundred and fifty) separate occasions despite

receiving ample notice that Plaintiff was represented by counsel and that she was revoking her consent to be contacted on her cellular telephone.

37. The actual call volume may be much higher as the number of calls placed by FNB Omaha to Plaintiff have overwhelmed Plaintiff and caused her to experience a significant amount of anxiety and stress.

38. Defendant would often call Plaintiff numerous times each day demanding payment on the account.

39. Defendant would use an automatic dialing machine when placing the calls to Plaintiff.

40. Plaintiff was contacted repeatedly regarding non-payment of the debt owed to Defendant despite Defendant being notified, on five separate occasions, that Plaintiff had retained counsel to deal specifically with the debt owed to Defendant and that Plaintiff revoked consent to be contacted on her cellular telephone.

41. Defendant's calls were frequent in nature and continued despite receiving written confirmation that Plaintiff was represented by an attorney and that all calls to Plaintiff's cellular telephone were to stop.

42. Defendant intentionally ignored Plaintiff's letters of representation of revocation of consent and willfully attempted to coerce Plaintiff into making payment on her account by bombarding her cellular telephone with auto dialed calls.

43. FNB Omaha intended to frustrate and annoy Plaintiff at all time of the day, regardless of where Plaintiff was, in an attempt to have her make payments on the account.

44. Despite receiving five written notices regarding Plaintiff's representation by counsel and revocation of her consent to be contacted on her cellular telephone Defendant continued to call and contact Plaintiff daily regarding her account with Defendant.

//

//

## FIRST CAUSE OF ACTION
(Violation of the Rosenthal Act)
(Cal. Civ. Code §§ 1788-1788.32)
(Against Defendant FNB Omaha)

45. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

46. Plaintiff provided written notice on five separate occasions that she was represented by sending Defendant a letter with the name, address, and contact information of her attorney and informed Defendant that she was represented.

47. Defendant continued to call and attempt to make contact with Plaintiff despite receiving notice of representation and being informed that Plaintiff had retained counsel in an effort to deal with the debt that was owed to Defendant.

48. The calls and communications made by Defendant to Plaintiff were not related to statements of Plaintiff's account and were attempts to collect a debt.

49. Plaintiff received over 250 calls and from Defendant beginning approximately September 13, 2019 - present.

50. Defendant violated Cal. Civ. Code §1788.14 by contacting Plaintiff after receiving noticed that Plaintiff had retained an attorney.

## SECOND CAUSE OF ACTION
(Violation of the Rosenthal Act)
(Cal. Civ. Code §§ 1788-1788.32)
(Against Defendant FNB Omaha)

51. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

52. Defendant placed over 250 calls to Plaintiff.

53. Plaintiff was contacted multiple times per day by Defendant.

54. Defendant violated Cal. Civ. Code §1788.11 by calling Plaintiff over 250 times in a deliberate attempt to call Plaintiff repeatedly and annoy Plaintiff.

### THIRD CAUSE OF ACTION
(Intrusion Upon Seclusion)
(Against Defendant FNB Omaha)

55. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as set forth herein.

56. The California legislature explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Rosenthal Fair Debt Collection Practices Act and incorporating most of the Federal Act's provisions into the Rosenthal Act.

57. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

58. FNB Omaha intentionally interfered, physically or otherwise, with the solitude and seclusion of Plaintiff, namely by engaging in unlawful and intrusive communications.

59. FNB Omaha intentionally caused harm to Plaintiff's emotional well-being by engaging in highly offensive conduct in the course of collecting its debt, and thereby invaded and intruded upon Plaintiff's rights to privacy.

60. Plaintiff has a reasonable expectation of privacy in her solitude, seclusion, and/or private concerns and affairs.

61. These intrusions and invasions against Plaintiff by FNB Omaha occurred in a way that would be highly offensive to a reasonable person in that position.

62. FNB Omaha received five separate certified notices stating that it was no longer to contact Plaintiff as she was represented by counsel and revoked her consent to be contacted on her cellular telephone.

63. As a result of such invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from FNB Omaha.

64. FNB Omaha also acted with oppression, fraud, and/or malice, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

**Cal. Civ. Code § 3294**

65. Defendant also acted with oppression, fraud, and/or malice, thereby entitling Plaintiff to exemplary damages in an amount according to proof and a finder of fact at hearing.

66. Defendant had actual knowledge that it continued to violate both state and federal collection laws as it received certified notice regarding representation of Plaintiff by an attorney.

67. These calls were made with knowledge that Plaintiff was represented by counsel and could not be communicating directly with Plaintiff, let alone using an automated telephone dialing system.

68. Given Defendant's knowledge of Plaintiff's representation and revocation of consent, these calls were an attempt to collect a debt in an illegal manner with a conscious disregard for Plaintiff's rights under both the Rosenthal Fair Debt Collection Practices Act and the Telephone Consumer Protection Act.

69. Given Defendant's knowledge of Plaintiff's representation and revocation of consent, Defendant's illegal communications were done to intentionally subject Plaintiff to the unjust hardship of receiving at least 250 telephone calls.

70. The sheer volume of calls was intentionally designed to exhaust Plaintiff into paying Defendant.

## FOURTH CAUSE OF ACTION
### (Violation of the TCPA)
### (47 USC § 227)
### (Against Defendant FNB Omaha Bank)

71. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

72. Since at least early August of 2019 Defendant started calling Plaintiff's cellular telephone requesting that payment be made on the accounts Plaintiff held with Defendant.

73. Defendant was informed that Plaintiff revoked her consent to be contacted by Defendant in September of 2019.

74. Defendant called Plaintiff at least 250 (two hundred and fifty) times since Plaintiff withdrew her consent to be contacted by an automatic dialing machine.

75. Defendant was notified on five separate instances that Plaintiff had revoked her consent to be contacted on her cellular telephone by an automatic dialing machine, however, despite being informed on multiple occasions of the revocation, FNB Omaha continued place calls to Plaintiff's cellular telephone without her consent and with complete disregard to any of the five prior notices that were received by FNB Omaha.

76. Defendant would contact Plaintiff nearly daily regarding payment on the accounts.

77. Defendant placed the above cited calls using an artificial or prerecorded voice to deliver the collection messages without Plaintiff's prior express consent.

78. All calls placed by Defendant to Plaintiff utilized an "automatic telephone dialing system" as defined by 47 U.S.C. §227(a)(1).

79. These calls were made to Plaintiff's cellular telephone and were not calls for an emergency purposed as defined by 47 U.S.C. §227(b)(1)(B).

80.Plaintiff expressly revoked any consent that may have previously been given to Defendant to be contacted by an automatic dialing machine in September of 2019 and ultimately sent five notices to Defendant regarding her revocation of consent.

81. Overall Plaintiff was contacted at least 250 (two hundred and fifty) times by Defendant on her cellular phone.

82.These telephone calls by Defendant, or its agent, violated 47 U.S.C. §227(b)(1)(A)(iii).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

**a.** An award of actual, statutory, and punitive damages.

**b.** An award of actual damages pursuant to California Civil Code §1788.30(a), as will be proven at trial, which are cumulative and in addition to all other remedies provided for in any other cause of action pursuant to California Civil Code §1788.32.

**c.** An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code §1788.30(b), which are cumulative and in addition to all other remedies provided for in California Civil Code §1788.32; and

**d.** An award of costs of litigation and reasonable attorney's fees pursuant to Cal. Civ. Code §1788.30(c).

**e.** An award of statutory damages of $1,500.00 pursuant to 47 U.S.C. §227(b)(3)(C) for each and every violation.

**f.** An award of exemplary damages pursuant to Cal. Civ. Code § 3294.

**g.** Pursuant to 47 U.S.C. §227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

Dated: July 14, 2020

**Gale, Angelo, Johnson, & Pruett, P.C.**

By:   */s/ Joe Angelo*
      Joe Angelo
      Elliot Gale
      Attorneys for Plaintiff

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial of this matter by jury.

**Gale, Angelo, Johnson, & Pruett, P.C.**

Dated: July 14, 2020

<u>*/s/ Joe Angelo*</u>
Joe Angelo
Elliot Gale
Attorneys for Plaintiff

12